IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| EVE NEEL,<br><br>    Plaintiff,<br><br>vs.<br><br>CRST EXPEDITED, INC.,<br><br>    Defendant. | No. 1:18-cv-98<br><br>**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY** |

Defendant CRST Expedited, Inc. ("CRST") submits the following Brief in support of its motion to exclude the report and testimony of Plaintiff's expert witness Justine Tinkler.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................... 2

II. FACTS ..................................................................................................................... 2

III. LAW & ARGUMENT ............................................................................................ 4

    A. STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY UNDER FED. R. EVID. 702, 703, AND *DAUBERT*. .................................. 4

    B. MS. TINKLER'S OPINIONS ARE IRRELEVANT TO PLAINTIFF'S NEGLIGENCE THEORY OF LIABILITY ........................ 5

IV. CONCLUSION ....................................................................................................... 8

I.  **INTRODUCTION**

In this sexual harassment and retaliation case under Title VII and Iowa Code Chapter 216, Plaintiff seeks to rely on a "Report on CRST's Policies and Procedures for Preventing Sexual Harassment" authored by Justine E. Tinkler.[1] (Exhibit A to Defendant's Motion to Exclude) Ms. Tinkler is an Associate Professor in the Department of Sociology at the University of Georgia.

Under the Court's "gatekeeping" role in deciding the admissibility of expert testimony, Ms. Tinkler's report and testimony should be excluded for two reasons:

1. Ms. Tinkler's opinions are not relevant to Plaintiff's negligence theory of hostile work environment sex harassment or retaliation.

2. Ms. Tinkler's opinions do not concern subjects that require specialized knowledge that would assist the trier of fact to understand the evidence or to determine a fact in issue.

Fed. R. Evid. 702; Fed. R. Evid. 703; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

II.  **FACTS**

In her report[2] Ms. Tinkler offers six opinions:

1. CRST's policy prohibiting sexual harassment and its training video on sexual harassment are training and policy not enough to prevent sexual harassment. Among other things, she criticizes a statement in the training video that "[m]any [charges filed with the EEOC] lack merit; some don't," stating that this is "false"

---

[1] According to Plaintiff's Expert Designation, Ms. Tinkler has not testified as an expert witness at trial or in a deposition during the last four years. Defendant conducted a Westlaw search with no date restriction and did not find any case that contained Ms. Tinkler's name.
[2] Ms. Tinkler's report is attached as Exhibit A to Defendant's Motion to Exclude.

and "sends the message that the organization will not trust complainants and will tend to err on the side of believing the accused."

2. CRST's investigative and disciplinary process are not an effective means for preventing sexual harassment. In reaching this conclusion she states that "[t]he fact that when harassment complaints are formally reported and investigated, those who are accused but do not admit to the harassment suffer no financial or other consequences contributes to a culture of tolerance."

3. CRST's practice of concluding that most complaints of sexual harassment cannot be verified has very little of a deterrent effect on the incidents of harassment. She states that "[w]hen harassment is rampant and unpunished, employees will perceive their workplace to be tolerant of harassment no matter what the training materials say."

4. CRST's team-driving approach increases dangers for women, decreases the likelihood that women can report problems when at risk, and hampers the investigative process by limiting evidence/witnesses. She states that when trainees are assigned to lead drivers, they are disincentivized to report for fear of receiving negative performance appraisals as well for fear of actions that could put their training in jeopardy. She states CRST should have a criminal background check and dashboard cameras.

5. CRST has a culture of tolerance of sexual harassment because of its training materials, because lead drivers are not subject to background checks or rigorous

3

evaluations of their likelihood to harass, and because there are no dashboard cameras.

6. CRST has not demonstrated a good faith effort to prevent sexual harassment. She states that CRST should have been reevaluating their team driving and training procedures ever since they started receiving sexual harassment complaints and being sued. "CRST will not prevent harassment without being more proactive in their approach."

### III. LAW & ARGUMENT

#### A. STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY UNDER FED. R. EVID. 702, 703, AND *DAUBERT*.

A district court's determination regarding the admissibility of expert testimony is guided by Fed. R. Evid. ("**Rule**") 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue:
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702. Plaintiff bears the burden of establishing the admissibility of Ms. Tinkler's testimony and methodology by a preponderance of the evidence. *Goss v. Intern. Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. C00-0035, 2003 WL 25949302, *3 (N.D. Iowa Nov. 17, 2003).

In *Daubert*, the U.S. Supreme Court emphasized the district court's gatekeeper role when screening expert testimony for relevance and reliability. *Daubert*, 509 U.S. at 591-93; *see also Blue Dane Simmental Corp. v. Am. Simmental Ass'n,* 178 F.3d 1035, 1040 (8th Cir. 1999) (during the evaluation "of expert testimony under Federal Rule of Evidence 702, the district court must look to both the relevancy and reliability of the testimony"). *Daubert* provides a number of nonexclusive factors a court can apply in performing this role: "(1) whether the theory or technique 'can be (and has been) tested'; (2) 'whether the theory or technique has been subject to peer review and publication'; (3) 'the known or potential rate of error'; and (4) whether the theory has been generally accepted." *Peitzmeier v. Hennessy Indus., Inc.,* 97 F.3d 293, 297 (8th Cir. 1996) (citing *Daubert*, 509 U.S. at 593-94).

### B. TINKLER'S OPINIONS ARE IRRELEVANT TO PLAINTIFF'S NEGLIGENCE THEORY OF LIABILITY

Here, all six of Ms. Tinkler's separately-numbered opinions examine CRST's efforts to prevent sexual harassment and, in the event harassment occurs, CRST's investigation of complaints and the discipline that flows from such investigation.[3] These opinions are wholly irrelevant in this case. At most Ms. Tinkler's opinions would be relevant to the *Faragher-Ellerth* affirmative defense to <u>vicarious</u> liability, in which an employer must show that "(a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Ind., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 806 (1998). The affirmative defense recognizes "a theory

---

[3] Tinkler's opinions also deal with the frequency of incidents of sexual harassment, the impact of CRST's team-driving approach on the number of harassment incidents, and the culture at CRST regarding sexual harassment. These subjects are equally inapplicable to a negligence theory of sexual harassment.

of vicarious liability for misuse of supervisory power would be at odds with the statutory policy if it failed to provide employers with some . . . incentive" to prevent violations and make reasonable effort to comply with Title VII. *See Faragher*, 524 at 806.

The problem with Plaintiff's argument is that the *Faragher-Ellerth* affirmative defense is not at issue in this case because the individual whom Plaintiff accuses of sexual harassment -- Michael Anderson, Plaintiff's Lead Driver -- is not a supervisor. The Eighth Circuit Court of Appeals has made clear that CRST lead drivers are not "supervisors" of their trainees, and instead are co-workers. *EEOC v. CRST Van Expedited, Inc.,* 679 F.3d 657, 685 (8th Cir. 2012) ("we concur with the district court that CRST's Lead Drivers were their trainees' coworkers, not their supervisors. Consequently, CRST cannot be vicariously liable for any sexual harassment in which its Lead Drivers engaged, and the *Ellerth-Faragher* Defense is inapplicable to this case.")

Rather than involving harassment by a supervisor, this case involves harassment by a co-worker. Under the applicable legal standard, Plaintiff must establish that CRST **knew or should have known of the sexual harassment and failed to take prompt and effective remedial action**. *See Hales v. Casey's Marketing Co.,* 886 F.3d 730, 735 (8th Cir. 2018) (citing five elements of a claim of hostile work environment) (emphasis added). <u>None</u> of Ms. Tinkler's opinions are relevant to the issue of whether prompt and appropriate corrective action occurred for the conduct Plaintiff experienced.[4]

The bulk of Tinkler's opinions regarding CRST's policies deal with part (a) of the *Faragher-Ellerth* affirmative defense. The opinions purport to address what policies a

---

[4] Clearly Ms. Tinkler's opinions are not relevant to Plaintiff's retaliation claims. A review of Ms. Tinkler's report shows she does not offer any opinion concerning CRST's treatment of or actions towards Plaintiff following her report of harassment.

6

reasonable company would maintain to prevent harassment and what policies a reasonable company would maintain to correct harassment. Plaintiff's negligence theory of liability does not implicate whether or not CRST's policies are well designed. Rather, "[a]n employer's liability turns on whether the employer was aware of the conduct and whether it took appropriate action to remedy the circumstances in a timely and appropriate manner." *Sellars v. CRST Expedited, Inc.*, ____ F.Supp.3d ____ (N.D. Iowa 2019) (citing *Hales v. Casey's Marketing Co.,* 886 F.3d 730, 735 (8th Cir. 2018); *see also Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1125 (8th Cir. 2007). The question is "not whether the investigation was adequate . . . but rather whether the remedial action was adequate." *Knabe v. Boury Corp.*, 114 F.3d 407, 412 (3d Cir. 1997). "Proper remedial action need be only 'reasonably calculated to stop the harassment,' and remedial action that does not end the harassment can still be adequate if it is reasonably calculated to do so." *Engel,* 506 F.3d at 1125.[5] Tinkler's opinions regarding generally applicable policies and procedures have no bearing or applicability on this assessment whatsoever.[6]

Moreover, even if Tinkler's opinions were somehow relevant to a fact in issue (which they are not), Plaintiff cannot show the opinions are of the kind that would be helpful to the trier of fact to understand the evidence or to determine a fact in issue. *See* Fed. R. Evid. 702(a). The jury is uniquely equipped to assess the simple question it will be presented:

---

[5] The Eighth Circuit has specifically ruled that CRST's actions in "(1) removing the [harassed] woman from the truck as soon as practicable, arranging overnight lodging at a motel and subsequent transportation to a CRST terminal at the company's expense; (2) requesting a written statement from the [victim]; (3) relieving the [victim] from future assignments with the alleged harasser; and (4) reprimanding the alleged harasser and barring him from team-driving with women indefinitely" constitute "the type of prompt and effective remedial action that our precedents prescribe." *Nichols v. Tri-Nat'lLogistics, Inc.,* 809 F.3d 981, 987 (8th Cir. 2016) (quoting *E.E.O.C. v. CRST Van Expedited, Inc.,* 679 F.3d 657, 693 (8th Cir. 2012)).

[6] Even if an employer had top-notch policies and procedures, it would fail the negligence standard if the response to a given complaint were not reasonably calculated to stop harassment. Conversely, if an employer's policies were poor but the evidence demonstrated the action taken stopped the harassment, the plaintiff could not establish the employer was negligent.

7

whether CRST's response was reasonably calculated to stop the harassment. *See Wilson v. Muckala,* 303 F.3d 1207, 1218 (10th Cir. 2002) (affirming district court's exclusion of plaintiff's human resources expert in sexual harassment case, finding "the facts were not so complicated as to require the testimony of an expert witness on either the adequacy of the plan or policy or the investigation that followed."); *Lipsett v. University of Puerto Rico,* 740 F.Supp. 921, 925 (D.P.R. 1990) (holding in a sexually hostil work environment case that "the jury does not need additional enlightenment on this particular issue: this subject does not lend itself to expert testimony because it deals with common occurrences that the jurors have knowledge of through their experiences in everyday life and their attitudes toward sexual matter."); *Smith v. Colorado Interstate Gas Co.,* 794 F.Supp. 1035, 1044 (D. Colo. 1992) (granting defendant's motion to exclude expert testimony regarding gender and race discrimination because "[g]ender and race discrimination are issues an average person can evaluate and understand without the assistance of an expert"). As a result, Tinkler's testimony should be excluded.

## IV. CONCLUSION

For the foregoing reasons, Ms. Tinkler's opinions, and testimony concerning the same, should be excluded. Her opinions have no bearing on Plaintiff's claims of sexual harassment and retaliation.

SIMMONS PERRINE MOYER BERGMAN PLC

By /s/ Thomas D. Wolle
Thomas D. Wolle  AT0008564
115 3rd St. SE, Suite 1200
Cedar Rapids IA 52401
Telephone: 319-366-7641
Facsimile: 319-366-1917
Email: twolle@spmblaw.com
ATTORNEY FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2019, I filed the foregoing with the Clerk of Court using the electronic filing system which will send notification of such filing to the following:

Ann E. Brown
ANN BROWN LEGAL PC
600 3rd St SE, Suite 302
Cedar Rapids, IA 52401
ATTORNEY FOR PLAINTIFFS

/s/ Thomas D. Wolle